# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **JAMES J. LOFTIN,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-05-301-FHS-SPS |
| ) | |
| **JO ANNE B. BARNHART,** ) | |
| **Commissioner of the Social Security** ) | |
| **Administration,** ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

The claimant James J. Loftin requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for disability benefits under the Social Security Act. The claimant appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons discussed below, the Commissioner's decision should be AFFIRMED.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act only "if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work in the national

economy . . ." *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term substantial evidence has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The court may not reweigh the evidence nor substitute its discretion for that of the agency. *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account

---

[1] Step one requires claimant to establish he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that claimant establish he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. *See id*. §§ 404.1521, 416.921. If claimant is engaged in substantial gainful activity (step one) or if claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity (RFC) to perform his past relevant work. If claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which claimant–taking into account his age, education, work experience, and RFC–can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

**Claimant's Background**

The claimant was born on November 14, 1950, and was 53 years old at the time of the administrative hearing. He has a tenth grade education and previously worked as a construction worker, water/sewer laborer, cattle ranch worker, and equipment operator. The claimant alleges disability as of July 15, 2002, because of chest pain, shortness of breath (two or three times per week) related to a heart impairment, and back pain. He maintained insured status through June 30, 2003.

**Procedural History**

On July 17, 2002, the claimant protectively filed an application for disability benefits under Title II (42 U.S.C. § 401 *et seq.*). The application was denied.[2] After a hearing on January 12, 2004, ALJ Michael Kirkpatrick found the claimant was not disabled in a decision dated June 16, 2004. The Appeals Council denied review, so the ALJ's decision represents the Commissioner's final decision for purposes of this appeal. 20 C.F.R. § 404.981.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He found the claimant had the residual functional capacity ("RFC") to lift and/or carry ten pounds

---

[2] Prior applications for disability benefits and for supplemental security income payments were filed by the claimant in 1977, 1985, 1990, and 2000, but they were all denied. The ALJ declined to reopen any prior applications. *See Brown v. Sullivan*, 912 F.2d 1194, 1196 (10th Cir. 1990) (finding that the ALJ's decision not to reopen claimant's prior applications for benefits was discretionary and is not subject to judicial review under § 405(g)), *citing Califano v. Sanders*, 430 U.S. 99, 107-09 (1977).

frequently and 20 pounds occasionally; stand and/or walk for at least six hours in an eight-hour workday; and sit for six hours in an eight-hour workday (Tr. 29). The ALJ concluded that although the claimant could not perform his past relevant work, he was nevertheless not disabled pursuant to Rule 202.11 of the Medical-Vocational Guidelines because he could perform a full range of light work in the regional and national economies (Tr. 36).

## Review

The claimant's sole contention is that the ALJ erred by failing to include stricter limitations on his ability to walk in the RFC determination. The claimant asserts such limitations are supported by: (i) results from treadmill stress tests he underwent; and, (ii) his inability to complete these tests. The undersigned Magistrate Judge finds the claimant's contention unpersuasive.

The record reveals that over the course of the claimant's treatment for repeated bouts of chest pain, he underwent several treadmill stress tests and was examined at various facilities for his complaints. In May 2001, the claimant underwent a stress test at the Veterans Administration Hospital because of chest discomfort. He exercised for 6:46 before the test was stopped due to dyspnea. During the test, no arrhythmias or chest pain were noted and blood pressure remained normal. Although the claimant's capacity was noted to be mildly decreased (10 percent to 20 percent), the overall impression was that the study was negative by EKG criteria (Tr. 228, 264). The claimant underwent another stress test in September 2001 for complaints of chest pain. His total exercise time was 9:00, and he stopped due to fatigue. The claimant reported no chest pain during the test, he had adequate ETT by heart rate, he was negative for ischemia by EKG criteria, and he had a large amount

of ectopy (Tr. 227). In February 2002, the claimant's laboratory testing was within normal limits and a chest X ray was unremarkable for infiltrate effusion or consolidation. Although an EKG revealed a left anterior block, the diagnosis was of angina pectoris (Tr. 30-31,195-202). At a visit in July 2002, the claimant had taken nitroglycerin for his chest pain and laboratory findings were insignificant for abnormalities. A chest X ray revealed normal cardiac size with no infiltrates, but an EKG revealed right ventricular ischemia (Tr. 31, 210-22). The claimant was sent to the VA Medical Center where a stress test was performed, which showed no chest pain, adequate exercise stress test by heart rate, negative for ischemia by EKG criteria, and a large amount of ectopy (Tr. 31, 224-25). A few days following his release from the VA, the claimant presented at the Medical Center of Southeastern Oklahoma with complaints of chest pressure. Acute myocardial infarction was ruled out, and the claimant was diagnosed with stable angina (Tr. 31, 268-69). A second stress test in July 2002 indicated a total exercise time of 13:04 with stopping due to chest discomfort. Although the claimant experienced mild to moderate chest pain during the test, no arrhythmias were present and blood pressure remained normal. The overall impression was of a negative study by EKG criteria (Tr. 236). By February 2003, the claimant was admitted to the Atoka Memorial Hospital for evaluation and then discharged and advised to report to the VA Medical Center in Dallas. A chest X ray revealed borderline cardiomegaly, with no pulmonary congestion to suggest acute cardiac compensation. The claimant was diagnosed with stable exertional angina (Tr. 32, 319-21). During an adenosine thallium stress test in February 2003, the claimant complained of shortness of breath, but no EKG changes were present. He had some "mild to moderate reversible changes inferiorly." (Tr. 32, 317-18).

The claimant was sent to Abdolkarim Khorasanchian, M.D., for a cardiology consultative examination and exercise stress test in March 2003. Dr. Khorasanchian noted the claimant's chest was clear with no rales or wheezing and no chest wall tenderness. The claimant's first and second heart sounds were normal and no obvious murmur, click, gallop, or rub was present. There was no edema and pulses were adequate in the claimant's extremities. On the treadmill test, the claimant completed 3:29 and stopped after experiencing mild chest pain under the left breast area, which resolved after stopping. The claimant did not develop any wheeze, rales, or gallop, and the EKG criteria for ischemia were not satisfied. Although Dr. Khorasanchian indicated the claimant was unsure on the treadmill and unable to keep up with the speed, he noted the claimant's gait was normal with no limp (Tr. 32, 297-98). Following Dr. Khorasanchian's examination of the claimant, an agency physician reviewed the medical evidence and determined that the claimant's physical impairments, including his heart impairment, were nonsevere (Tr. 33, 311).

In April 2003, the claimant returned to the VA Medical Center for a follow-up visit. His cardiac examination was normal, and he was encouraged to stop smoking and exercise at least three times per week (Tr. 32, 314-16). The claimant returned to the Atoka Memorial Hosptial emergency room in July 2003 complaining of chest pain. His chest X ray was normal, and he was diagnosed with unstable angina (Tr. 32, 338-51). Follow-up testing at the VA Medical Center, including cardiac catherization showed normal coronary vasculature, with sluggish flow, indicating possible microvascular disease. The claimant was discharged with stable angina (Tr. 32, 352). An August 2003 visit to the emergency room resulted in

a diagnosis of stable angina (Tr. 33, 363) and a return in December 2003 also resulted in a diagnosis of angina (Tr. 33, 419-26).

The ALJ thoroughly outlined the claimant's numerous visits for complaints of chest pain, shortness of breath, and dizziness. He noted that the claimant had the benefit of multiple EKG's, chest X rays, stress tests, and laboratory tests, all of which were consistent with an RFC for light work (Tr. 30-34). While the ALJ did not discuss all of the claimant's treadmill stress tests, he did discuss the test performed by Dr. Khorasanchian in July 2002 and the February 2003 test at the VA Medical Center. The claimant argues that the ALJ did not discuss all of Dr. Khorasanchian's observations, *e. g*, that the claimant was unsure on the treadmill and had difficulty keeping up with the speed, and that he had to stop the tests before they were completed because of chest pain or shortness of breath, but the ALJ is not required to discuss every piece of evidence. *See Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996) (noting that although the record must show that the ALJ considered all of the evidence, "[he] is not required to discuss every piece of evidence."), *quoting Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984). In any event, neither Dr. Khorasanchian nor any other physician opined that the claimant had any functional limitations because of his performance on these tests. Further, the ALJ found that the claimant could perform light work, which in and of itself reflected *some* limitation on the claimant's ability to walk. Accordingly, the ALJ's RFC determination that the claimant can perform a full range of light work is supported by substantial evidence, as is his conclusion that the claimant is not disabled pursuant to Rule 202.11 of the Medical-Vocational Guidelines. The decision of the Commissioner should therefore be affirmed.

**Conclusion**

The Magistrate Judge FINDS that correct legal standards were applied and that the decision of the Commissioner is supported by substantial evidence, and therefore RECOMMENDS that the ruling of the Commissioner of Social Security Administration be AFFIRMED.  Parties are herewith given ten (10) days from the date of this service to file with the Clerk of the Court any objections with supporting brief.  Failure to object to the Report and Recommendation within ten (10) days will preclude appellate review of the judgment of the District Court based on such findings.

**DATED** this 5th day of February, 2007.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**